NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERICA PLASO,<br><br>Plaintiff,<br><br>v.<br><br>IJKG, LCC, IJKG PROPCO, LLC (a/k/a NEWCO) and IJKG OPCO, LLC d/b/a BAYONNE MEDICAL CENTER,<br><br>Defendants. | Civil Action No. 11-5010 (JLL) (MAH)<br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendants IJKG, LLC, IJKG PROPCO, LLC, and IJKG OPCO, LCC d/b/a Bayonne Medical Center (collectively "Defendants" or "BMC")'s motion for summary judgment pursuant to Fed. R. Civ. P. 56 and for the imposition of sanctions pursuant to 28 U.S.C. § 1927. The Court has considered the parties' submissions in support of and in opposition to the instant motion, and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, the Court grants Defendants' motion for summary judgment and declines to impose sanctions.

**I.   BACKGROUND**

   A.   Factual Background

Erica Plaso ("Plaintiff" or "Plaso") is a former employee of MCR Martin, LLC ("HCMCR"). (CM/ECF No. 29 ¶ 1). Plaintiff began working for HCMCR as a consultant in January 2008, after interviewing with HCMCR's President and Managing Partner, R. Brent Martin ("Martin"), at HCMCR's corporate office in Parma, Ohio. (*Id.* ¶¶ 1, 2). HCMCR

1

maintained files and records concerning Plaintiff's employment at this office during the duration of her employment. (*Id.* ¶ 7). An employment contract governed the terms of Plaintiff's employment with HCMCR. (*Id.* ¶ 8). In relevant part, this contract provided as follows:

- "Employee [Plaso] shall be subject to the direction of and report to the President and Managing Member of HCMCR or other HCMCR Managers that the President and Managing Member may designate;"
- "Employee [Plaso] shall provide the Services as directed by HCMCR and in compliance with all policies and procedures of HCMCR and the terms of the Client Engagement to which Employee is assigned;"
- "HCMCR shall pay Employee [Plaso] . . . . The payment shall constitute full payment for all billable and non-billable Services rendered by Employee;"
- "HCMCR shall pay Employee [Plaso] for the time spent by Employees traveling to or from a Client Engagement;" and
- "HCMCR shall reimburse Employee [Plaso], pursuant to HCMCR's expense policies, for reasonable out-of-pocket business expenses incurred by Employee."

(*Id.* ¶¶ 9, 11-14). The employment contract also authorized only HCMCR or Plaintiff to terminate Plaintiff's employment with HCMCR. (CM/ECF No. 25-3 ¶ 8).

At the time of Plaintiff's hiring, Martin assigned Plaintiff to work at Bayonne Medical Center ("BMC") where he served as Chief Restructuring Officer ("CRO"). (CM/ECF No. 23 at 1; CM/ECF No. 30 at 2, 11; CM/ECF No. 32 at 8). Plaintiff did not spend all of her time as an HCMCR employee assigned to BMC. (CM/ECF No. 29 ¶¶ 28-30). While Plaintiff was on assignment at BMC, Martin was almost always on site, and directed the performance of Plaintiff's work duties. (*Id.* ¶ 42, 48). For instance, Martin established Plaintiff's work hours, and had the authority to allow Plaintiff to take time off from work or to work from home. (*Id.* ¶¶ 26, 27, 31). Conversely, no BMC employee ever told Plaintiff when to work. (*Id.* ¶ 52). Martin was also the only person to formally discipline, and to receive business expense reimbursements from, Plaintiff while she was at BMC. (*Id.* ¶¶ 55, 56).

Indeed, Plaintiff was in constant contact with Martin while at BMC—she spoke with and sent e-mails to Martin every day. (*Id.* ¶¶ 46, 47). To maintain this constant contact, Martin

2

directed Plaintiff to use only an e-mail address provided to her by HCMCR, despite the fact that BMC also provided her with an e-mail address. (*Id.* ¶¶ 32, 33). While at BMC, Plaintiff was also in contact with Brad Gingerich ("Gingerich"), an HCMCR consultant to whom she reported. (*Id.* ¶ 49). Gingerich was almost always on site while Plaintiff was at BMC. (*Id.*).

Plaintiff claims that Martin began making unwelcomed sexual advances in 2008. (CM/ECF No. 30 at 5-6). Specifically, Plaintiff maintains that Martin forcibly kissed her in June 2008, and made inappropriate sexual comments to her throughout her time with HCMCR. (*Id.* at 5-8). Among Martin's purported inappropriate comments was a suggestion to Plaintiff and other female employees that they should wear "skirts only" at an after work meeting for drinks on March 17, 2010. (*Id.* at 7). Martin's purported sexual harassment of Plaintiff triggered her departure from HCMCR and BMC. (CM/ECF No. 29 ¶¶ 60-64).

On June 24, 2010, Plaso informed BMC's Vice President of Human Resources, Jennifer Dobin, of Martin's purported sexual harassment. (CM/ECF No. 31 ¶ 55). Plaintiff then spoke with Daniel Kane ("Kane"), the CEO of BMC, and told him that she no longer wanted to be around Martin. (CM/ECF No. 29 ¶ 61). Kane subsequently advised Plaintiff to go home, and made sure that Martin was not near her office while she packed. (*Id.*).

Plaintiff filed a Complaint against Defendants on August 31, 2011, alleging four counts under Title VII of the Civil Rights Act of 1964[1] ("Title VII"), 42 U.S.C. § 2000e-2, *et seq.*, and three counts under the New Jersey Law Against Discrimination[2] ("NJLAD"), N.J.S.A. 10:5-1, *et seq.* The allegations underlying all of the counts stem from Martin's purported sexual harassment. On March 22, 2013, Defendants moved for summary judgment on all claims and for

---

[1] Plaintiff alleges the following counts under Title VII: (1) hostile work environment; (2) *quid pro quo* discrimination; (3) retaliation; and (4) gender discrimination. (CM/ECF No. 1).
[2] Plaintiff alleges the following counts under the NJLAD: (1) hostile work environment; (2) *quid pro quo* discrimination; and (3) retaliatory discharge. (CM/ECF No. 1).

3

the imposition of sanction against Plaintiff's counsel pursuant to 28 U.S.C. § 1927 and the inherent powers of the Court.

## II. LEGAL STANDARD

### A. Standard for Summary Judgment

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure if the materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a summary judgment motion, the moving party must first show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (citations omitted). To do so, the non-moving party must offer specific facts that establish such an issue, and may not simply rely on unsupported assertions, bare allegations, or speculation. *Id.* (citation omitted). The Court must consider all facts and the reasonable inferences therefrom in the light most favorable to the non-moving party. *See Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

### B. Standard For Imposition of Sanctions

Title 28, Section 1927 of the U.S. Code provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The power to impose sanctions "is a matter entrusted to the discretion of the district court." *Hackman v. Valley Fair*, 932 F.2d 239, 242 (3d Cir. 1991). The imposition of sanctions under Section 1927 requires a finding that "an attorney has (1) multiplied

proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the costs of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Prudential Ins. Co. of America*, 278 F.3d 175, 188 (3d Cir. 2002) (citation omitted). Indicia of bad faith include "findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *Id.* at 188 (citation omitted). To impose attorneys' fees, "a finding of willful bad faith on the part of the offending lawyer is a prerequisite." *Hackman*, 932 F.2d at 242.

If a court ultimately finds that Section 1927 sanctions are appropriate, it may award only those costs and expenses resulting from the particular misconduct. *In re Prudential Ins. Co. of America*, 278 F.3d at 188 (citation omitted). District courts should assess costs on an attorney only "in instances of a serious and studied disregard for the orderly process of justice." *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986) (citations and internal quotations omitted).

## III. DISCUSSION

### A. Defendants' Motion For Summary Judgment

Defendants move for summary judgment on all of Plaintiff's Title VII and NJLAD claims. Title VII bars "employers" from discriminating against an individual "with respect to compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Similarly, the NJLAD prohibits "employers" from discriminating against an "individual in compensation or in terms, conditions or privileges of employment" because of such individual's sex. N.J.S.A. 10:5-12(a). Thus, Title VII[3] and the

---

[3] Plaintiff argues underneath the heading "Defendants' Insistence that Plaso Was Merely an Independent Contractor *Does Not Absolve BMC of Liability Under Title VII*" that "*in the context of a suit bought under Title VII*, BMC's insistence that Ms. Plaso was merely an independent contractor will not absolve it from liability for *quid pro quo* sexual harassment and retaliation." (CM/ECF No. 30 at 25 (emphasis added)). Plaintiff then offers only citations to the NJLAD and New Jersey case law to support her proposition concerning Title VII. (*Id.* at 25-26). Because Plaintiff offers no support for her conclusion that pertains to Title VII, the Court finds her argument unavailing.

5

NJLAD generally require an employment relationship to exist between a plaintiff and a defendant to hold said defendant liable for acts of discrimination. *See Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 119 (3d Cir. 2013) (noting that an employment relationship is a prerequisite to a Title VII claim); *Hicks v. Mulhallan*, No. 07-1065, 2008 U.S. Dist. LEXIS 36362, *11 (D.N.J. May 5, 2008) (holding that plaintiff's discrimination claims under Title VII and the NJLAD failed as a matter of law because plaintiff was not an "employee" of defendant). Generally, an employment relationship exists when defendant is either plaintiff's (1) employer or (2) joint employer. *See Vitalis v. Sun Constructors, Inc.*, 481 F. App'x 718, 726-27 (3d Cir. 2013) (affirming district court's grant of summary judgment to a company, in part, because the company was neither plaintiff's employer nor joint employer under Title VII); *Russo v. Ryerson*, No. 01-4458, 2006 WL 477006, *4 (D.N.J. Feb. 28, 2006) (Linares, J.) (assessing whether defendants were plaintiff's joint employer on summary judgment for purposes of Title VII and NJLAD liability).

Defendants argue that Plaintiff cannot prevail under either Title VII or the NJLAD because Plaintiff cannot establish that BMC is liable to Plaintiff as either (1) her employer or (2) joint employer.[4] (CM/ECF No. 23 at 9-10). Defendants maintain that only HCMCR employed Plaintiff, and that as a result they are entitled to summary judgment on all of Plaintiff's claims. (CM/ECF No. 23 at 14). In support, Defendants assert that only HCMCR: (1) hired Plaintiff; (2) had the authority to fire Plaintiff pursuant to her employment contract; (3) formally disciplined Plaintiff; (4) maintained personnel records concerning Plaintiff; and (5) paid Plaintiff. (*Id.*). Defendants also contend that Martin, HCMCR's President and Managing Partner, was in

---

[4] Defendants also argue that Plaintiff cannot establish that she was terminated from employment by BMC, and that even if BMC were liable to Plaintiff, she released her claim against BMC when she settled with HCMCR. (CM/ECF No. 23). Because the Court concludes that no reasonable jury could find that an employment relationship or joint employment relationship existed between Plaintiff and Defendants under Title VII or the NJLAD, the Court need not reach Defendants' other arguments.

6

charge of day-to-day supervision of Plaintiff. (*Id.*). The Court will address the merits of Defendants' arguments as they pertain to Title VII and the NJLAD in turn.

### 1. Plaintiff's Title VII Claims

#### a. Whether BMC Was Plaintiff's Employer Under Title VII

In deciding whether there is any issue of material fact as to whether BMC was Plaintiff's employer, the Court is guided by the factors set forth in *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 323-24, 112 S. Ct. 1344, 117 L. Ed. 2d 581 (1992).[5] The Third Circuit has noted that it is appropriate for courts to focus their analysis on the level of control defendant exercised over plaintiff when applying the *Darden* factors, looking to: (1) who paid plaintiff; (2) who hired and fired plaintiff; and (3) who had control over the plaintiff's daily employment activities. *See Covington*, 710 F.3d at 119 (citation and internal quotations omitted).

With regard to the first factor, nothing in the record suggests that BMC paid Plaintiff. Plaintiff's employment contract with HCMCR instead provided that HCMCR was to pay Plaintiff for her services, travel time, and reasonable out-of-pocket business expenses. (CM/ECF No. 29 ¶¶ 12-14). Plaintiff's HCMCR employee earnings record and HCMCR expense reimbursement sheet provide further proof that HCMCR paid Plaintiff. (CM/ECF No. 25-4; CM/ECF No. 25-5). Plaintiff offers only speculation and conclusory allegations that BMC paid Plaintiff and, thus, fails to raise a genuine issue of material fact.

A consideration of the second factor—who hired and fired Plaintiff—also favors Defendants. HCMCR hired Plaintiff. (CM/ECF No. 29 ¶ 1). Plaintiff's employment contract

---

[5] The following factors guide the Court's determination: (1) "the hiring party's right to control the manner and means" of the worker's performance; (2) "the skill required;" (3) "the source of the instrumentalities and tools;" (4) "the location of the work;" (5) "the duration of the relationship between the parties;" (6) "whether the hiring party has the right to assign additional projects to the hired party;" (7) "the extent of the hired party's discretion over when and how long to work;" (8) "the method of payment;" (9) "the hired party's role in hiring and paying assistants;" (10) "whether the work is part of the regular business of the hiring party;" (11) "whether the hiring party is in business;" (12) "the provision of employee benefits;" and (13) "the tax treatment of the hired party." *Darden*, 530 U.S. at 323-24 (citation and internal quotations omitted).

7

with HCMCR authorized only HCMCR or Plaintiff to terminate her employment. (CM/ECF No. 25-3 ¶ 8). Indeed, aside from Plaintiff's conclusory assertions, nothing in the record suggests that BMC could terminate Plaintiff's contract with HCMCR even if it tried to do so. (*Id.*).

As to the third factor, HCMCR, and not BMC, had control over Plaintiff's daily employment activities. Martin, HCMCR's President and Managing Partner, controlled Plaintiff's work hours, selected her assignments, and was in constant communication with her. (CM/ECF No. 29 ¶¶ 25-31, 46-47). In contrast, no BMC employee ever told Plaintiff when to work. (*Id.* ¶ 52). These facts are consistent with the terms of Plaintiff's employment contract with HCMC, which granted HCMCR the ability to direct what services Plaintiff would provide. (*Id.* ¶ 8-11). Indeed, Plaintiff points to no material fact which would indicate otherwise. Plaintiff's argument that Martin's job title at BMC, *i.e.*, that of CRO, creates a genuine issue of material fact as to whether BMC employed Plaintiff is unavailing. Plaintiff offers only one paragraph concerning Martin's job title at BMC, which fails to provide any facts as to whether Martin's job title alone made Plaintiff an employee of BMC. (CM/ECF No. 30 at 11). Such conclusory allegations fail to raise a genuine issue of material fact. Plaintiff's participation in separate litigation related to BMC also fails to raise a genuine issue of material fact. Plaintiff's argument that she was treated as an employee in said litigation is conclusory and unsupported by the record. (CM/ECF No. 30 at 18; CM/ECF No. 33-3 at 75:15-78:9). Thus, a consideration of the *Covington* factors compels this Court to conclude that there is no genuine issue of material fact as to whether BMC employed Plaintiff.

        b.    <u>Whether BMC was Plaintiff's Joint Employer Under Title VII</u>

Plaintiff argues that even if BMC was not her employer she could nevertheless hold BMC liable as a joint employer under Title VII. (CM/ECF No. 30 at 18). A joint employment

relationship exists under Title VII when "two entities exercise significant control over the same employees."[6] *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997) (citations omitted). Whether an entity exercises significant control over an employee along with another entity hinges on whether that entity has: (1) "authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours;" (2) "day-to-day supervision of employees, including employee discipline;" and (3) "control of employee records, including payroll, insurance, taxes and the like." *Butterbaugh v. Chertoff*, No. 06-18, 479 F. Supp. 2d 485, 491 (W.D. Pa. Mar. 20, 2007) (quoting *Cella v. Villanova Univ.*, No. 01-7181, 2003 WL 329147, *7 (E.D. Pa. Feb. 12, 2003)). Applying this test compels the Court to conclude that there is no genuine issue of material fact as to whether BMC was Plaintiff's joint employer.

As to the first prong, no genuine issue of material fact suggests that BMC had "authority to hire and fire [Plaintiff], promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours." *Butterbaugh*, 479 F. Supp. 2d at 491 (citation and internal quotations omitted). As already discussed, HCMCR paid Plaintiff, set Plaintiff's hours, and had the sole authority to hire and fire Plaintiff. HCMCR also had the authority to promulgate work rules and assignments pursuant to Plaintiff's employment contract with HCMCR. (CM/ECF No. 29 ¶¶ 9-11, 16, 27). Moreover, Plaintiff's employment contract with HCMCR explicitly stated that "[e]mployee [Plaso] shall be subject to the direction of and report to the President and Managing Member of HCMCR or other HCMCR Manager that the President and Managing Member may designate." (*Id.* ¶ 11). Thus, even when BMC supplied

---

[6] Plaintiff applies the wrong standard, the "integrated enterprise test," which is instead used to determine whether "a company and its affiliates [are] a single employer under Title VII." *Vitalis*, 481 F. App'x at 727-28 (quoting *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 85 (3d Cir. 2003)). Plaintiff has not argued that BMC and HCMCR are a single employer. Accordingly, this test is inapposite.

9

Plaintiff with a security card, desk, and other office equipment, Martin ultimately controlled how Plaintiff could use such equipment. For instance, Martin directed Plaintiff to use only an e-mail address provided to her by HCMCR, even though BMC also provided her with an e-mail address. (*Id.* ¶¶ 32-33).

As to the second prong, the record does not suggests that BMC exercised significant "day-to-day supervision of [Plaintiff], including employee discipline." *Butterbaugh*, 479 F. Supp. 2d at 491 (W.D. Pa. 2007) (citation and internal quotations omitted). To the contrary, Plaintiff's employment contract with HCMCR explicitly stated that "[Plaintiff] shall be subject to the direction of and report to the President and Managing Member of HCMCR or other HCMCR Manager." (CM/ECF No. 29 ¶ 11). In accordance with the terms of Plaintiff's employment contract, Plaintiff was in constant communication with Martin while assigned to BMC. (*Id.*). In addition, Plaintiff reported to Gingerich, an HCMCR consultant who was almost always at BMC. (*Id.* ¶ 49). Martin's status as the only person to formally discipline Plaintiff provides further evidence that HCMCR exercised significant day-to-day supervision of Plaintiff. (*Id.* ¶ 55).

No reasonable jury could conclude that the limited supervision exercised by Kane and other BMC employees over Plaintiff made BMC Plaintiff's joint employer when viewed together with the undisputed fact that no BMC employee ever told Plaintiff when to work. *See Zarnoski v. Hearst Bus. Commc'ns*, No. 95-3854, 1996 U.S. Dist. LEXIS 181, *26-28 (E.D. Pa. Jan. 11, 1996) (noting that some degree of supervision fails to create a genuine issue of material dispute); *Gift v. Travid Sales Assocs., Inc.*, 881 F. Supp. 2d 685, 692 (E.D. Pa. Aug. 2, 2012) (noting that some evidence that plaintiff took instruction from defendant did not evidence significant control of plaintiff's work). Likewise, Plaintiff's assertion that some BMC employees reported directly

to her is immaterial. The second prong of the joint employer tests asks whether an entity exercised day-to-day supervision over plaintiff, and not whether plaintiff exercised day-to-day supervision over an entity's employees. *Butterbaugh*, 479 F. Supp. 2d at 491 (citation and internal quotations omitted).

With respect to the third prong of the joint employer test, the Court concludes that there is no genuine issue of material fact as to whether BMC had "control of employee records, including payroll, insurance, taxes and the like." *Butterbaugh*, 479 F. Supp. 2d at 491 (citation and internal quotations omitted). HCMCR issued W-2 wage and tax statements to Plaintiff throughout her employment with HCMCR. (CM/ECF No. 26-2; CM/ECF No. 26-3). HCMCR kept these records on file at its corporate office in Ohio, along with Plaintiff's employment agreement, I-9 form, employee health insurance enrollment application, employee earnings record, expense reimbursement record, and a notice of disciplinary action made against Plaintiff. (CM/ECF Nos. 25-1 to - 6). Plaintiff is unable to produce any employee records maintained by BMC, and instead offers only a statement that BMC "may" have kept a file concerning Plaintiff's medical record. (CM/ECF No. 29 ¶ 7). Such speculation does not raise a genuine issue of material fact. For the foregoing reasons, this Court holds that Defendant is entitled to summary judgment on Plaintiff's Title VII claims.

2. <u>Plaintiff's NJLAD Claims</u>

The foregoing analysis applies with equal force to Plaintiff's NJLAD claims against BMC and, therefore, Defendants are entitled to summary judgment on Plaintiff's NJLAD claims. Under the NJLAD, courts determine whether an employer-employee relationship exists between plaintiff and defendant by applying a test that is similar to the *Darden* test, the *Pukowsky* test.[7]

---

[7] The *Pukowsky Test* considers the following factors: "(1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation—supervised or unsupervised; (3) skill; (4) who furnishes the

11

*See Rowan v. Hartford Plaza Ltd.*, 2013 WL 1350095, *3 (N.J. Super. App. Div. 2013); *see also Chrisanthis v. Cnty. of Atl.*, 361 N.J. Super. 448, 454-55, 825 A.2d 1192 (App. Div. 2003). Thus, for the reasons that this Court concluded that there was no genuine issue of material fact as to whether BMC employed Plaintiff pursuant to the *Darden* test, this Court concludes the same pursuant to the *Pukowsky* test. Likewise, there is no genuine issue of material fact supporting Plaintiff's contention that BMC was Plaintiff's joint employer under the NJLAD for the reasons set forth above. *See Russo*, 2006 WL 477006 at *4 (applying principles of Title VII jurisprudence to determine whether defendant was plaintiffs' joint employer under the NJLAD).

B. Defendants' Motion For Imposition of Sanctions

Defendants contend that the Court should impose sanctions against Plaintiff because Plaintiff's counsel allegedly made repeated attempts to avoid disclosure of an earlier settlement agreement between Plaintiff and HCMCR. (CM/ECF No. 23 at 18-19). Defendants maintain that "the settlement agreement reached between [Plaintiff] and HCMCR defeats, as a matter of law, the claims asserted in this case against [Defendants]." (*Id.* at 18). "Had the settlement agreement been provided at the initial stage of discovery," Defendants assert, "the costs of the subsequent discovery, interim court conferences and [Defendants' motion discussed herein] could have been avoided." (*Id.* at 19).

Having considered the aforementioned arguments, the Court does not find that Plaintiff's alleged misconduct rises to the level of bad faith. Additionally, the Court is not satisfied that Plaintiff's counsel multiplied the proceedings here in an unreasonable and vexatious manner. 28

---

equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the 'employer;' (10) whether the worker accrues retirement benefits; (11) whether the 'employer' pays social security taxes; and (12) the intention of the parties." *Pukowsky v. Caruso*, 312 N.J. Super. 171, 182-83, 711 A.2d 398 (App. Div. 1998) (citations omitted).

U.S.C. § 1927. Accordingly, the Court declines to exercise its discretion to issue sanctions against Plaintiff.

## IV. CONCLUSION

For the reasons discussed herein, Defendants' motion for summary judgment is GRANTED in its entirety and Defendants' request for sanctions is DENIED.

An appropriate Order accompanies this Opinion.

DATED: __ of May, 2013.

JOSE L. LINARES
U.S. DISTRICT JUDGE